Jimmy John's Overtime Litigation, Lucas v. Jimmy John's, and Mr. Lesser, we will hear from you when you're ready. May it please the Court. This Court, most recently, and actually most comprehensively, addressed the predicate for the injunctions that issued by the District Court in the Atkins case two years ago. In the Atkins case, what I'm referring to is the discussion in Atkins of what constitutes an act in aid of jurisdiction. And an act in aid of jurisdiction, according to Atkins, has to be something whereby the other action, which is to be enjoined, has a, might affect, or is affecting, can't be speculative, can't be hypothetical, and has to be somewhat imminent, the adjudicatory competence of the Court, the Federal Court, that wishes to use the, wishes to issue the injunction. And respectfully, Your Honors, that's really the end of, I think, the discussion today. Because, certainly, what Judge Kocouris said, and his basis in his statements on the record, no opinion, was it'll be, it'll avoid duplication for those judges out there. The fact that other judges may or may not have to do work does not affect his ability to hear and adjudicate the case that he had before him. So it doesn't, his, that's his, that's his rationale. Now. So let me ask you this. I certainly take the point that the All Writs Act and an anti-suit injunction are very powerful medicine. And that something as simple as just generalized good case management is not likely to be something sufficient for that. I wonder if there's any extent to which Judge Kocouris might have been worrying about potential issue preclusion if the cases against the franchisees went forward in their respective districts. Does he say anything about that? Is he, that I could at least see as a legal consequence. He does not. In the three transcripts. And they would have to be non-mutual, of course, because the franchisees are different. But there is some, there is offensive non-mutual issue preclusion just as defensive. I was, that was, of course, what I was going to say next. It was certainly, I think there's actually almost no likelihood. And if there is even a theoretical likelihood of non-mutual offensive claim preclusion, we are so. Issue preclusion, not claim preclusion. I'm sorry, issue. Did I say claim? I apologize. You're right. Even if there is some theoretical one that we could spin out, in order to issue an injunction using the powerful medicine, as you call it, or as the Supreme Court said, an extraordinary remedy for exceptional circumstances, you have to have more than just a hypothetical, theoretical, speculative basis for doing so. It has to be, and I think you could probably draw four things from the case, the jurisprudence that has to exist. The first has to be a threat to the judicatory competence. And the mere fact that a case may out there in America have some issue preclusive effect on a case in another court, that happens every day in America, of course. No, I mean, Justice Ginsburg made a similar point in Taylor against Sturgill, where, I mean, duplicative litigation does exist. It's a cost of our system. Correct. Exactly. That's my point. So the first is it has to affect the judicatory competence. The second thing I think you can draw from the case law is it has to be not hypothetical or speculative and imminent. And, of course, that's such cases as Winkler or the asset allocation case the Seventh Circuit both had. The third is, of course, it has to be narrow, tailored to the threat to the judicatory competence. Well, Judge Cokort, I'm going to say I think Judge Cokort was trying to do that, and he's made a number of exceptions to this injunction to allow the plaintiffs to do some things to protect their interests. Your Honor, I think you've just flipped it. The injunction itself is, to use the word in Atkins, cold stop on those cases. It simply permits. So the injunction itself is broad. It is overbroad. What he has subsequently permitted is modifications to it. Well, that's right. So let's focus on those, where we are now. As I understand it, assistant store managers in other districts are able to file their own suits, correct? They certainly can file, yes, correct. And then they are, are they prohibited from, and then that's enough to preserve their rights with respect to the statute of limitations, right, for the named plaintiffs?  Okay. Are they presently able to take efforts that we would normally think happen in such cases to identify other similarly situated employees and former employees? Well, in theory, most certainly. In other words, another one of my clients who's in the court below could file a case in, say, Wyoming, and at the same time try to pack as much into that case at the outset. Literally file a motion for conditional, notice of conditional certifications, FLSA. At the same time they file, of course, the defendant, Jimmy Johnson, would run to this court as quickly as possible to try to put a cold stop to the judge. Has that happened in about 10 cases? This has happened in 12 cases altogether. But in terms of, I'm trying to understand prejudice to both named plaintiffs and other potential plaintiffs in the case. Okay. Named plaintiffs seem to be able to preserve their individual rights, even if it's not economical to pursue the case as one individual. But at this point, Judge Koukouros' orders or his practice of dealing with these orders would prevent efforts to provide notice, identify others, provide notice, and give them an opportunity to join those other cases in Wyoming or New York or wherever, right? Correct. And that's a problem as far as you're concerned. That is a problem. Is that the problem as far as you're concerned, or is that too narrow? I think it's too narrow. And let me put it this way. In Atkins, for example, if you recall the facts of Atkins, there was a pending settlement in this district. And there was an individual in Missouri who wished to have their case go to trial. And one could have said as to the individual in Missouri, you're not prejudiced if I just put a temporary stop on your case while I hear the injunction to let this settlement go through, which was worked on hard by all parties, a great deal of case management logic to it. But the issue of whether or not there's prejudice to the individual I don't believe is actually a relevant consideration at all because it is rather, does the court have a threat to its judicatory competence? So you're making a broad argument because, of course, we're not in the realm of the Anti-Injunction Act, which has other motivating purposes, comedy in particular, but the examples of one federal court, one federal district court, and actually enjoining proceedings in other federal district courts are few and far between because the Supreme Court has said that the inherent power of the court to take such actions is tightly constrained, and that's not the way we manage litigation. Correct. So it's really, I think, a point of principle. I think what Judge Hamilton, and I was curious about this too, I thought the biggest problem was with people in districts outside the state of Illinois who have opted in to the litigation here are at risk of losing their ability to sue their franchisors if they can't file that action too because this action, this is all joint employer stuff, right? So the action here is just against the parent, if I can call it, entity, and since they've opted in, the statute of limitations has been running on them. Isn't that right? As to claims against their franchisees. As to claims against the franchisees. Correct. Exactly. So if they can't, at a minimum, file the claims against the franchisees in the relevant districts, and I would say after the Supreme Court's Bristol-Myers-Squibb decision of last term, they have to go to the districts. They can't do it here. You're absolutely right. Bristol-Myers entered my head because it, in fact, has narrowed yet further the places. Right. To be clear, Your Honor. So you're really forced by Bristol-Myers if you want to sue the franchisees, and if somebody says, I'm not going to put all my eggs in the parent basket. I would like to also have a case against the franchisee. If it's a Kansas franchisee, they've got to sue in Kansas. Correct. But if I may, Your Honor, maybe I misunderstood your observation. In fact, the only individuals who are enjoined, only become enjoined, this was your question, Judge Hamilton, upon their filing the cases. So, in other words, there are over 600 individuals who joined the case downstairs, and there's no blanket injunction on all of them. Jimmy Johnson did not ask for that. Rather, as soon as the case is filed, Jimmy Johns learns about it, and we've actually provided Jimmy Johns with those cases as we've been filing them. Jimmy Johns then goes to the court below. But my point ultimately is there's been no demonstration of adjudicatory competence of Judge Kors in hearing his case under either what he said, nor indeed, and I don't want to lose my rebuttal if I can finish this question, nor under the theoretical considerations that Jimmy Johns is presenting to the court as to what Judge Kors might possibly have in mind, which we actually don't know beyond what he did say in his few sentences. Okay. Fine. You can save the rest of the battle. Thank you. Mr. Motman? May it please the Court, Gerald Bantman, on behalf of Jimmy Johns, we submit that the district court did not abuse its discretion in crafting and entering the order below. Jimmy Johns' motion sought entry of the order based on the inherent equitable powers of the court and the All Writs Act. So I have a lot of problems. Right. So I'm going to just tell you, I have a lot of problems with this injunction, starting with the very abbreviated statement of reasons for it that Judge Kokoris gave moving along, whether this is the kind of thing that's under the winter four-part test for injunctions or whether we really should take a more flexible approach is less interesting to me because in any event, you have to show that the normal remedies are inadequate, and I don't see that, and as a matter of fact, what I do see in the Supreme Court's decisions is real caution toward these kinds of exercises of equitable power, and I'm having trouble given how the court has spoken repeatedly about the fact that there's going to be duplicative litigation. You could have a stay in the court that's entertaining the franchisee suits. You could coordinate discovery, and I don't see Judge Kokoris doing anything to justify this. Well, Your Honor, on those points, he held three hearings. I know. I read the transcript, and it was skimpy. And there are transcripts. He allowed submissions by the party, and he managed the case for two and a half years. But that doesn't tell me why an anti-suit injunction telling another district court judge in a completely different part of the country, you may not proceed with this suit. And it's very clear whether you tell the party or whether you tell the judge is about the same thing. It's a very, very disruptive sort of thing to do, whether it's under the auspices of the Anti-Injunction Act for a state court or whether it's under the auspices of the All Writs Act for a fellow federal court. It makes every federal district judge, in a sense, his or her own MDL judge. And we do have the MDL process for cases that need nationwide management. Yes, in this particular matter, Your Honor, the judge enjoined opt-in plaintiffs, 13 of them who were before him. He stated in his transcript in the second hearing that he had no power to tell those other judges what to do or to enjoin the franchisees. So he wrote the injunction and enjoined only those 13 individuals. But what's the difference? I mean, as each individual has come in, the injunction has been expanded. And it just seems to me inconsistent with, I mean, I think of Justice, I think somebody cited Justice Scalia's opinion in the Grupo Mexicano de Desarrollo decision, our traditionally cautious approach to equitable powers. You have the Supreme Court over and over again saying, you don't just issue an injunction. And if Judge Kokoris had looked at something analogous to the winter factors, I think he might have realized that this medicine is too strong. Well, Your Honor, to that point, I think the context would be four particular orders that Judge Kokoris had entered to craft a case management plan beginning in January of 2016. But why does his case management plan have an effect on an assistant manager's suit in Kansas against his Jimmy John's franchisee? Because that order scheduled discovery on joint employer, limited the number of depositions of franchisees. But that's Jimmy John's issue. Jimmy John's isn't saying that the assistant manager isn't employed by his franchisee. There might also be a joint employer issue, which is certainly before Judge Kokoris. To use your analogy of the Wyoming case, plaintiffs would end run the four orders that were put in place here, begin to take depositions, and could then subpoena Jimmy John's. What is the problem with that? Employers who deal with parallel claims around the country are often subject to different sorts of discovery orders. A judge in one district will allow what you manage to defeat in another one. In this particular case, the plaintiffs filed three nationwide class and collective actions, and the district court judge in managing them created a series of orders with respect to the number of depositions and the timing. We know that, and Judge Hamilton is asking you what's wrong with just letting the franchisee cases go forward. For all you know, the judge in Wyoming would take a look at what's going on in Illinois and put a stay on certain forms of discovery. I mean, judges coordinate these things all the time, even without the MDL panel. In this particular case, the plaintiffs made a head-snapping reversal of their case theory, filed those other cases. Well, you call this a critical inconsistency. I call it just caution. If you win on your not being a joint employer, then there are only claims, and we have to assume for now that they're valid on the merits, it seems to me, for this purpose. Then their only claims are against their franchisees. They're entitled to protect their rights. Seems like America. Yes, but the 13th case they filed, the MNs case in the northern district of Georgia, hedged their bets again. What's wrong with hedging? Don't you ever hedge your bets in litigation? Seems like that's what any good lawyer does. They argued in MNs that there was an unknown, unnamed third-party joint employer to be determined. So they didn't like the orders that Judge Koukouras put in place to adjudicate these issues, filed lawsuits all over the country to escape those orders. See, that's what issue preclusion does for you, though. If Judge Koukouras resolves this case the way you would like it to be resolved and decides that this is not a joint employer situation, I would be shocked if you did not show up in Georgia and anywhere else around the country with that order in hand saying this issue has been conclusively resolved, it was necessary to decision, it was litigated actively by the parties, it meets all of the criteria for issue preclusion, end of discussion. As would the plaintiff, so if it was a different ruling. But in this particular case. So I'm saying why is that not enough? Because the judge realized that his plan to get to a decision on that issue was being harmed and impaired by the filing of these other lawsuits. Well, but you're saying a Rule 26 discovery plan is enough to allow an anti-suit injunction, and I have never seen a case that goes that far. You would transform national litigation. District judges would be enjoining each other day and night because everybody's got litigation plans. This was a very unique situation that Judge Koukouras faced. No, it's not. It's a common situation. Well, in this particular case, he had spent two and a half years crafting, meeting with the lawyers on a monthly basis, and figuring out how to get to the resolution. He's a very conscientious judge, as are many other district judges around the country. I don't see that as unique. And the statute of limitations that applies here is what? Well, it's two years for a non-wilful violation, three years for a willful violation. And that is running, in essence, every day on every potential plaintiff, right? Right, because the plaintiffs selected their case theory and sued Jimmy Johns on a theory that it controlled everyone. And you've asserted, no doubt, a vigorous defense to that theory. So anybody who thinks that they've got a good claim for overtime, I would think is entitled to pursue their other remedies, right? And Judge Koukouras' order allowed them, and they've filed those cases. They're in place. They're just not going forward until this process. So the real question, though, is about the folks who have not yet joined, right? Right. You want to keep them out, right? You have not leaned on your franchisees to agree to broader tolling agreements, have you? We cannot. They're their own business. We don't control them. Okay, so you can't control them. They're separate parties. And so the effect of this order is that, let's say, in Kansas or California, we've got 10 or 20 or 50 assistant store managers who have similar claims, may or may not have heard about them, and Judge Koukouras' order prevents these plaintiffs and those district courts from giving notice and an opportunity to join those actions to those other plaintiffs. Those are the stakes, right? Correct. But it doesn't preclude any of those non-opt-ins from filing their own lawsuits at a state court or a federal court, sure. But you and I know, all of us know, it's perfectly normal in FLSA cases, collective action cases at this point, to provide discovery to identify other potential similarly situated employees and to notify them, right? That's correct. And that's prevented here, right? That is prevented for these 13 individuals. And anybody else. No, it doesn't prevent others. Well, you come in every time a new person has done something. We have to assume it could be anyone else because there's no legal principle that limits it to these 13. Certainly the order doesn't apply to a California state court action. So let's put it this way. Suppose somebody who is not a named plaintiff in this case, an assistant store manager in Los Angeles, files an action in a federal district court in the Central District of California and seeks all that discovery for folks in California. Any reason to block that? Judge Koukouras' order doesn't block that. Right. Why is it so why are you why would it be so much worse if the person is also a plaintiff in the Chicago case? Because those plaintiffs were a party to a series of orders that managed the case in their running. But managed the case only vis-à-vis Jimmy Johns, the parent. The franchisees are not in the case and can't be in the case for personal jurisdiction reasons. But absent that order, they can take discovery from Jimmy Johns, they can serve subpoenas, they can go do things that Judge Koukouras had regulated. And you can ask for a protective order. The district judge has ample authority to give a protective order if discovery is sought. The judge entered these orders to sequence all of this discovery, looked at all of these particular parameters, and thought this was the best way forward. We think that there aren't rigid rules here. The All Writs Act needs to be flexible and practical. This court's realized that. And we think in this particular instance, this was a narrowly tailored and carefully crafted order by a district court judge who had his hands on this case for 2 1⁄2 years. We respectfully submit that the case should be approved. Of 2 1⁄2 years, has there been any merits in the discovery? No, because of the sequencing, it's all been joint employer discovery. The motion for summary judgment was briefed as of September and is pending for decision. If that is denied, the next sequence in the case is the merits discovery. Well, actually, won't that happen? There's reason to go forward in any event, right? Because you've got about 10% of the plaintiffs here are employed in corporate stores, right? That's correct. So they're going to have a claim regardless of the resolution of the joint employer. That's correct. So why not do some merits discovery? Well, Judge Koukouras thought that that was an inefficient way to use the party's resources. So he said we're not going to touch that until we're done with the joint employer issue because that impacts about 90% to 95% of the parties in front of him. We think that was his discretion, his view of a very complex situation, three nationwide class and collective actions, the way to structure the case to make it efficient. For those reasons, we respectfully submit the order should be affirmed. Thank you. Okay, thank you. Anything further, Mr. Lesser? If I may be very brief. If I may be very brief. Judge Hamilton, I believe you actually put your finger on the real reason that Jimmy John's Wex just occurs. That's why I was a little mystified by your concern about abstract issues of jurisdiction when I was asking you earlier about prejudice to your and your client's interests. I'm too often called a law geek, so I do worry about and think about those abstract issues. But they're not abstract in two senses, and this goes to your comment, Judge Wood. Judge Koukouras did, in essence, make himself a mini-MDL judge. And, in fact, the exceptions that Judge Hamilton asked me about earlier shows that he's micromanaging cases that are not before him in other federal district courts. This concern of overlapping what may happen is particularly something that occurs in FLSA cases. Because, as we know, even the MDL panel itself does not MDL-centralize literally the exact same MDL case against the exact same defendant, even when they're putative collective actions all across the country or overlapping class and collectives. Since 2010, it's basically stopped doing so, believing each case should be heard on its own merits. One last point. I'd like to bring back the threat, the concern that Judge Koukouras might have had about end-run of his orders. That's not a threat to his adjudicatory competence. Why? Because if something is discovered in one of his other cases, such as occurs every day in America and a very large country, if he has a discovery procedure in place, a schedule and the like, and we plaintiffs in another court find something that might have been useful here, he, of course, could say, I had a discovery schedule in place. I won't hear anything else you pull in from any other case. It's not a threat to his ability to decide the case before him. And that is the sine qua non of the All Writs Act. That is why Atkins, I believe, is important. I began there and probably will end there now. Because that says, unless the court's ability to hear the case before it is affected, the All Writs Act should not apply. And very one last sentence. There's a suggestion in the end of Pelley's brief that there should be a remand and allow Judge Koukouras maybe to craft another decision. This court's jurisprudence is quite clear that if the authority has been exceeded, which it has here, that what happens is the injunction is vacated or stayed while pending a potential appeal to the entire circuit. But rather, and this is expressly what it said at the end of Atkins, expressly what it says at the end of Winkler, to cite cases of this court, if the court below thinks it may have some authority to actually put in place an injunction for which as authority, the parties can readdress that below. But the injunction does not stay in place. Thank you. All right. Thank you. Thanks to both counsel. We will take this case under advisement. And the court is now going to take a brief recess.